# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### June 28, 2016 Session

## STATE OF TENNESSEE v. JEFFREY LEE SOWERS

### Appeal from the Criminal Court for Greene County
#### No. 15CR392    John F. Dugger, Jr., Judge

### No.  E2015-01961-CCA-R3-CD – Filed August 12, 2016

The Defendant, Jeffrey Lee Sowers, pleaded guilty in the Greene County Criminal Court pursuant to a negotiated plea agreement to official misconduct, a Class E felony, with the length and the manner of service of the sentence to be determined by the trial court. *See* T.C.A. § 39-16-402 (2014). The court sentenced the Defendant as a Range I, standard offender to eighteen months' incarceration. On appeal, the Defendant contends that the trial court erred in denying his request for judicial diversion. We affirm the judgment of the trial court.

## Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and ROBERT L. HOLLOWAY, JR., JJ., joined.

Dan R. Smith, Jonesborough, Tennessee, for the appellant, Jeffrey Lee Sowers.

Herbert H. Slatery III, Attorney General and Reporter; Lacy Wilber, Senior Counsel; Dan E. Armstrong, District Attorney General; and Ritchie Collins, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case arises from the Defendant's engaging in sexual contact with Greene County Jail inmates while teaching GED classes. The Defendant pleaded guilty to one count of official misconduct by way of an information, which is not included in the appellate record. According to the State's recitation of the facts,

> Jeff Sowers was a detective with the Greeneville Police Department. After work and when he was off duty from his job as a detective, Mr. Sowers

instructed GED classes for female inmates at the Greene County Jail. He did this under the auspices of the Greeneville City School System. The pertinent classes occurred throughout the first part of this year, 2015. In May jail personnel began receiving reports that contact of a sexual nature was taking place between Jeff Sowers and [multiple] female inmates.

At the sentencing hearing, the trial court inquired about the number of female inmates involved, and the prosecutor stated that Tennessee Bureau of Investigation (TBI) Special Agent Scott Lott interviewed approximately thirty female inmates. The prosecutor stated that although not all of the interviewed inmates reported sexual contact, in many instances, jail video surveillance recordings contradicted the inmates' denials of sexual contact. The prosecutor thought two or three inmates admitted having sexual contact with the Defendant. The trial court requested that Agent Lott testify regarding the factual basis for the Defendant's guilty plea.

TBI Agent Scott Lott testified that he interviewed twenty-nine or thirty female inmates who attended GED classes taught by the Defendant. He said that at least three female inmates admitted having sexual contact with the Defendant. He said that the inmates described touching without penetration. Agent Lott said that he reviewed thirty to fifty hours of jail surveillance recordings, which he said contradicted some of the inmates' statements that no sexual contact occurred.

Agent Lott testified that he spoke to the Defendant, who provided the following written statement:

> My name is Jeff Sowers and this is my voluntary written statement . . . on June 10th, 2015 at the Greeneville Police Department. I know my constitutional rights and I'm making this statement freely. I've been teaching GED classes at the Greene County Jail for maybe two years. I've been advised of the allegations against me and they are not true. Since I have been teaching GED classes at the jail I have tried to treat everyone, male and female alike, respectfully and like humans. I've told them I was not there on behalf of law enforcement and I wanted them to get an education, I wanted them to trust me. I brought the inmates candy in the past, we watched movies and I may have slapped someone on the leg if something was funny in the movie but I did not do it in a sexual manner . . . . [A.H.][1] was crying one time over her possible sentence offer and I gave her a hug. Last Monday [W.M.] was crying about her charges and I hugged her. I have never propositioned anyone. I've told them when they got out my feelings would be hurt if they saw me out and didn't say hi. I've never

---

[1] This court refers to victims of sexual offenses by their initials.

kissed an inmate on the cheek or anywhere else. I've never touched any inmate in a sexual way. One time I was teaching U.S. history and when I tried to draw a picture of the colonies it looked very phallic and the girls were laughing. I saw what was going on, said it looks like a big d--- and erased it and tried again. Sometimes the girls would say when they got out they were going to find their man but there was never any sexual discussions with them involving me.

[A.H.] brought up that she has hepatitis C and she said . . .it was thanks to [M.T.]. When [A.H.] came to class she would sometimes go into the SRT office with me and I would put sugar in her coffee. On May 18th, 2015, when she went into the office I spilled the sugar and had to clean it up and I also had to turn the blowers off in the gym. I've never had any sexual contact or conversations with any female inmate including [A.H.], [K.R.], [A.F.], [T.N.], or [S.H.].

Sometime last year [K.R.] asked me to bring her cigarettes and I told her it will get me fired and get her kicked out of the class. [K.R.] apologized for asking. I remember [A.F.] and [T.N.] but I have not seen either of them for a long time. I don't even recognize [S.H.'s] name. There was one girl, I don't recall who she was, that I asked her if her eye color was natural and when the girl said yes I told her they were prettiest eyes I had ever seen. I was just trying to be nice. I tell the inmates that most have spent their whole lives being beat down, that they haven't had a chance and I just try to be nice to them. I have never seen nor had any contact with any of the female inmates . . . outside of jail. I've never let any inmate have control of my cell phone. I played a music video on my phone for them before but I did everything myself. [A.H.] talked about her mother not going to see her in jail and one day I did stop and see her mother at work and told her that [A.H.] would like her to go see her.

I told all inmates that I would write them letters to show the judge, parole board, or any other person that needs it to show the inmate's participation and activity in the classes. This is a blanket letter I will write for any of them. I don't think I wrote one for [A.H.]. If some inmates came out with their pants sagging, I would tell them to pull their pants up.

I have been offered a polygraph test on a future date and I am willing to take one to clear my name.

Agent Lott testified that March 16, 2015 surveillance recordings from the gym inside the jail showed A.H.'s rubbing the Defendant's "pants area" and showed the

Defendant's rubbing A.H. in the same area. Agent Lott said that A.H. denied any sexual contact when he interviewed her.

On cross-examination, Agent Lott testified that the only incident he saw from the surveillance recordings was the March 16 incident involving A.H. He agreed he could not confirm the statements of the inmates who reported sexual contact with the Defendant. Agent Lott clarified that he saw the Defendant's and A.H.'s rubbing the other's respective "crotch" areas above their clothes. On redirect examination, Agent Lott agreed that during the GED classes when videos were viewed by the inmates, the lights were off or dimmed and that as a result, the surveillance recordings were black.

Sherry Sowers, the Defendant's wife of eleven and one-half years, testified that she and the Defendant were in the process of divorcing. She was the Director of Nursing at the Greene County Jail. She said that initially, the Defendant denied the allegations but that he ultimately admitted to sexual contact with four women. She said he admitted to fondling the women's breasts, placing his hand up their shirts, and placing his hands on their crotch areas. She said the Defendant also admitted that "a few" of the women placed their hands on the Defendant's crotch area. When asked if he had expressed any remorse, she said that the Defendant said the sexual contact probably would have continued had he not been caught.

On cross-examination, Ms. Sowers testified that the Defendant's conduct had hurt her. Although she said that the Defendant had sought mental health treatment, he had also threatened to stop the treatment. She agreed the Defendant never admitted to sexual penetration.

Several individuals submitted letters of recommendation in support of the Defendant, which were received as a collective exhibit. The Defendant was described as a dedicated and professional member of his church and a motivating, inspiring, and dedicated teacher. A coworker described the Defendant's behavior as professional, respectful, and appropriate. The Defendant's former wife described him as kind and compassionate and noted his military service in the area of explosive ordnance disposal. She described the Defendant's desire to build a sense of family within his military unit and to protect his fellow servicemen and servicewomen. She stated that since their divorce, the Defendant had been committed to his children and had played an active role in their lives.

The Defendant apologized to the court, his family, and his community, admitted his conduct was "wrong," and accepted responsibility for his actions. He told the trial judge that the judge would never see him again and that provided the opportunity, the Defendant would provide for his three children.

In determining the Defendant's sentence, the trial court relied upon the evidence presented at the hearing and the presentence report. We note that although the record reflects the presentence report was placed in the trial court file, the report is not contained in the appellate record. The court found that although the Defendant was amenable to correction, the circumstances of the offense were horrendous. The court noted that the Defendant was a police officer allowed to enter the jail and teach the inmates in a manner to help better their lives. The court found that the Defendant's conduct breached the public trust and stated that it gave great weight to this factor. The court found that the Defendant had no previous criminal history and that his social history and physical health had been good. The court noted that the Defendant had threatened to stop counseling when considering his mental health. The court stated that it considered the Defendant's military service favorable and noted the Defendant was deployed to Iraq and served his country.

Relative to deterrence, the trial court stated that it was aware correction officers in several nearby counties were "getting in trouble" and that "it needs to be deterred." The court noted that when a person was in a position of authority and control over inmates, the person could not use the authority and control for any type of personal benefit. The court determined that other correction officers needed to know that abuse of power and authority was a "serious situation." The court determined that judicial diversion might serve the Defendant's interests but noted relative to the public interest that the Defendant was a law enforcement officer who had "relations" with a felony inmate who was charged with murder. The court stated that it gave the greatest weight to the circumstances of the offense. The court noted that the breach of the public trust was enough to deny judicial diversion. The court determined that judicial diversion was not appropriate and stated that the Defendant "had a badge" and was "held to a higher standard." The court noted Agent Lott's statement in the presentence report that a law enforcement officer should be held to "higher accountability standards."

The trial court found that mitigating factor (1) applied because the case involved sexual battery. *See* T.C.A. § 40-35-113(1) (2014) ("The defendant's criminal conduct neither caused nor threatened serious bodily injury[.]").

The court found that enhancement factors (3), (7), and (14) applied. *See id.* § 40-35-114(3), (7), (14) (Supp. 2015). The court found that the offense involved more than one victim based upon the evidence presented at the hearing. *See id.* § 40-35-114(3) ("The offense involved more than one (1) victim[.]"). The court noted that the Defendant's wife stated the Defendant admitted to incidents involving four female inmates, that Agent Lott said the incidents involved at least three inmates, and that the information stated "female inmates." The court found that the Defendant's conduct was motivated to gratify his desire for pleasure or excitement. *See id.* § 40-35-114(7) ("The offense involved a victim and was committed to gratify the defendant's desire for

-5-

pleasure or excitement[.]"). The court also found that the Defendant abused a position of public trust and placed the greatest weight on this factor. *See id.* § 40-35-114(3) ("The defendant abused a position of public . . . trust . . . in a manner that significantly facilitated the commission or the fulfillment of the offense[.]").

The trial court discussed at length the need to deter law enforcement officers from engaging in similar conduct. It noted that an inmate might feel helpless and worthless because the inmate was incarcerated and that someone who was in a position of authority should not take advantage of an inmate. The court found that confinement was necessary to avoid depreciating the seriousness of the offense and was suited to provide an effective deterrent to others. *See id*. § 40-35-103(1)(B) (2014). The court found based upon the totality of the circumstances that the proper length of sentence was eighteen months. The court said that although it thought the proper sentence was two years, it was imposing an eighteen-month sentence because of the Defendant's ten-year military service and because the Defendant took responsibility for his conduct. The court ordered the sentence be served in confinement. This appeal followed.

The Defendant contends that the trial court abused its discretion by denying his request for judicial diversion. He argues that the court improperly placed undue weight on the Defendant's breaching the public trust in denying diversion because the breach of the public trust was inherent in the offense. The State responds that the trial court properly denied diversion because it considered all of the relevant factors.

A trial court may order judicial diversion for certain qualified defendants who are found guilty of or plead guilty or nolo contendere to a Class C, D, or E felony or a lesser crime; have not previously been convicted of a felony or a Class A misdemeanor; and are not seeking deferral for a sexual offense. *See* T.C.A. § 40-35-313(a)(1)(B)(i) (Supp. 2013) (amended 2014). The grant or denial of judicial diversion is within the discretion of the trial court. *State v. King*, 432 S.W.3d 316, 323 (Tenn. 2014) (citing T.C.A. § 40-35-313(a)(1)(A)). When considering whether to grant judicial diversion, a trial court must consider (1) the defendant's amenability to correction, (2) the circumstances of the offense, (3) the defendant's criminal record, (4) the defendant's social history, (5) the defendant's physical and mental health, (6) the deterrence value to the defendant and others, and (7) whether judicial diversion will serve the ends of justice. *State v. Electroplating*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998); *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996); *see King*, 432 S.W.3d at 326. "The record must reflect that the court has weighed all of the factors in reaching its determination." *Electroplating*, 990 S.W.2d at 229. If a trial court refuses to grant judicial diversion, "[T]he court should clearly articulate and place in the record the specific reasons for its determinations." *Parker*, 932 S.W.2d at 958-59. "The truthfulness of a defendant, or lack thereof, is a permissible factor for a trial judge to consider in ruling on a petition for suspended sentence." *State v. Neeley*, 678 S.W.2d 48, 49 (Tenn. 1984).

On review of a decision to grant or deny judicial diversion, this court will apply a presumption of reasonableness if the record reflects that the trial court considered the *Parker* and *Electroplating* factors, specifically identified the relevant factors, and placed on the record the reasons for granting or denying judicial diversion, provided any substantial evidence exists to support the court's decision. *King*, 432 S.W.3d at 327. If, however, the trial court failed to weigh and consider the relevant factors, this court may conduct a de novo review or remand the case for reconsideration. *Id.* at 328.

The record reflects that the trial court considered and articulated the weight it gave each *Electroplating* factor. We therefore review the court's decision for an abuse of discretion with a presumption of reasonableness. The court weighed against the Defendant the circumstances of the offense, the deterrent value, and whether judicial diversion would serve the ends of justice. The court placed great weight on the circumstances of the offense, which it considered horrendous based upon the Defendant's being a law enforcement officer and using his authority and power to engage in sexual contact with female inmates. As a result, the nature of the circumstances of the offense involved a breach of the public trust. The court determined these factors outweighed the Defendant's amenability to correction, the Defendant's lack of previous convictions, and the Defendant's good social history and health. We note that the trial court found one mitigating factor applied and also considered the Defendant's military record and his taking responsibility for his conduct in determining the sentence length. The record reflects that the court considered all of the appropriate factors in denying the Defendant's request for judicial diversion and that the court's determinations are supported by the evidence.

Relative to the Defendant's argument that the trial court improperly placed undue weight on the breach of the public trust because the breach of the public trust is inherent in the offense, the statute governing official misconduct does not reference a breach of the public trust. *See* T.C.A. § 39-16-402. The Defendant conceded this point during oral argument but argued that the court's "fixation" upon the breach of the public trust was tantamount to the court's determining official misconduct is an offense for which judicial diversion should never be granted, although the offense is diversion eligible. We disagree and determine nothing in the record reflects the court believed that any form of conduct leading to an official misconduct conviction would prevent its granting judicial diversion.

Official misconduct can be committed by various forms of conduct that do not include sexual contact with female inmates. We note that the Defendant cites to no authority stating that consideration of the nature of the breach of the public trust in the context of the circumstances of the offense is improper. The trial court was troubled by the circumstances of the offense because the Defendant was entrusted to educate the inmates but chose to engage in sexual contact with them. The court discussed the

vulnerability of the Defendant's victims as a result of their incarceration and emphasized how the breach of the public trust occurred as a result of the Defendant's conduct. The court determined that the Defendant's abuse of his authority and power was horrendous and that judicial diversion was not appropriate. The court did not determine, as a general principle, that any conduct sufficient for an official misconduct conviction would preclude its granting judicial diversion.

The trial court properly considered all of the appropriate factors and placed great weight on the circumstances of the offense and the deterrent value in denying diversion. We conclude that the trial court did not abuse its discretion by denying judicial diversion.

In consideration of the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
ROBERT H. MONTGOMERY, JR., JUDGE